**NAGEL RICE, LLP**
Greg Kohn, Esq. – GMK0107
103 Eisenhower Parkway
Roseland, New Jersey 07068
973-618-0400
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SETH SIEGEL, On Behalf of Himself and All Other Persons Similarly Situated,<br><br>               Plaintiff,<br>-against-<br>DUALIT, LTD, DUALIT AMERICA, INC and THE SMITH AGENCY, LTD.,<br>               Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, by his attorneys, Nagel Rice LLP, on behalf of himself and all others similarly situated, make the following allegations on personal knowledge and information and belief:

## I.    <u>INTRODUCTION</u>

1.    Plaintiff brings this action for actual damages, equitable relief, including restitution, injunctive relief, and disgorgement of profits, and all other relief available on behalf of themselves and all similarly-situated individuals and entities who own or have owned Dualit toasters manufactured by Dualit Ltd and distributed by Dualit America Inc. and the Smith Agency, Ltd the exclusive seller and marketing of Dualit household products in the United States (collectively, "Dualit" or "Defendants") containing a timer that is faulty and frequently fails after limited use resulting in a severe fire hazard. Upon information and belief, this defect exists in toaster models sold under the Dualit name including the model purchased by Plaintiff.

2.    All of the claims asserted herein arise out Dualit's design, manufacture, warranting, advertising and selling of the toasters.

3.    The toasters are designed and manufactured with a uniform and inherent design

1

defect that causes the timers to prematurely fail resulting in, best case scenario, burnt toast, and worst case scenario, a kitchen fire.

4.    Dualit knew, or was reckless in not knowing, at or before the time it sold the first unit, that the toasters contained the defect and that they would fail prematurely due to the defect. Dualit had sole and exclusive possession of this knowledge.

5.    Notwithstanding this knowledge, Dualit made uniform and material misrepresentations and uniformly concealed material information in its marketing, advertising, and sale of the toasters, which Dualit knew to be defective, both at the time of sale and on an ongoing basis.

7.    At all times, in every communication, Dualit made uniform written misrepresentations to and/or uniformly concealed from Plaintiff and everyone in the chain of distribution the defects in the toasters, and failed to remove the toasters from the marketplace or take adequate remedial action. Instead, Dualit sold and serviced the toasters even though it knew, or was reckless in not knowing, that the toasters were defectively designed, would fail prematurely, and would ultimately result in Plaintiff's inability to use his toaster for its intended purpose during the time Plaintiff reasonably expected he would have use of the toaster.

8.    The toasters have in fact failed prematurely, whether within or outside of applicable warranty periods.

9.    As a consequence of Dualit's false and misleading statements and active and ongoing concealment of the defect, Plaintiff and the Class purchased and currently own defective toasters and have incurred damages.

10.    Plaintiff asserts claims on behalf of himself and the Class under the New York General Business Law, § 349 ("NY GBL §349). Plaintiff also asserts claims on behalf of

himself and the Class for breach of express and implied warranties, the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, negligent misrepresentation, unjust enrichment under New York law, and breach of the covenant of good faith and fair dealing.

11.    Plaintiff seeks actual damages, injunctive relief, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief available to the Class.

## II.    PARTIES

12.    Plaintiff Seth Siegel resides in the Borough of Manhattan, State of New York.

13.    Defendant, Dualit Limited is a United Kingdom Corporation with offices at County Oak Way, Crawley, West Sussex, RH 11751.

14.    Defendant, Dualit USA is the trade name used for distribution purposes by the Defendant, Smith Agency, Ltd which exclusively handles all sales and marketing activities of Dualit household products in the United States. The Smith Agency has a principal place of business at 3888 Bluff View Point, Marietta, Georgia, 30062.

15.    Defendants, collectively "Dualit", import into, offer to sell, sell and otherwise distributes numerous toasters in the United States under the name Dualit.   These toasters, which are some of the most expensive toasters on the market, are available for purchase at numerous retail outlets, including Williams-Sonoma, Gracious Homes, Kohls, Sears, Bed Bath and Beyond, Amazon.com and other retail and online outlets.

## III.    JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction under 28 U.S.C. §1331 because plaintiff's claims arise under the Magnuson-Moss Warranty Act, 15 U.S.C. §2301. The Court has supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. §1367.

17.    This court also has subject matter jurisdiction over this action pursuant to the

Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), exclusive of interest and costs, and because at least one class member is of diverse citizenship from the Defendants; there are more than 100 class members nationwide; and the aggregate amount in controversy exceeds $5,000,000. This Court also has personal jurisdiction over the parties because Defendant conducts substantial business in New York, has had systematic and continuous contacts with New York, and has agents and representatives that can be found in this State.

18.    Venue is proper in this District under 28 U.S.C. § 1391 because the Lead Plaintiff is a resident of this judicial district, a substantial part of the events giving rise to the claims occurred and emanated out of this District, and Defendant's conduct has injured Class members residing in this District. Accordingly, this Court has jurisdiction over this action and venue is proper in this Judicial District.

19.    Defendant is amenable to personal jurisdiction in New York State. A substantial portion of the wrongdoing alleged in the Complaint took place in New York State and Dualit conducts business within the state sufficient to be considered present in New York.

## IV. FACTUAL BACKGROUND

20.    Dualit has been engaged in the business of designing, manufacturing, warranting, marketing, advertising, and selling Dualit-brand toasters since 1945. According to their website, the founder of the company designed and engineered a six-slice toaster for commercial use with a built-in timer (the first of its kind) in 1952. https://www.dualit.com/our-history

21.    Dualit uniformly markets its toasters as highly-rated, top-of the-line appliances. The website also sets forth its "ethos" consisting of six guiding principles, including:

2. Focused on high quality, well-engineered products.
New products are designed and engineered against stringent quality criteria, occasionally re-engineered and often enhanced, then tested to destruction, before they earn a Dualit badge. And they can only keep that

4

badge if all elements of the manufacturing process pass Dualit's stringent
quality control process.
And
3. Synonymous with customer service.
From its comprehensive 'spares & repairs' service to constant monitoring
of consumer feedback and the loyalty benefits offered by Café Club,
customer service is a number one priority. No gimmicks. No compromise.
Just great customer service. It must be Dualit.

**The Defect**

22.     The Toasters fail to perform as advertised, because the timer breaks resulting in a
toaster that will not shut off by itself. Unless a person remains in the kitchen and is watching the
bread toast so that it can manually turn the toaster off,  the toast will burn and ultimately go on
fire, resulting in potentially catastrophic results. Additionally, the extreme heat causes the
plastic to crack and the heating elements to break.

23.     Dualit failed to adequately design, manufacture, and/or test the Toasters to ensure
they were free from defects at the time of sale.

24.     At all relevant times, Plaintiff has used his Toaster in a foreseeable manner and
in the manner in which they were intended to be used.

25.     The defect, which manifests during the expected useful life of the Toasters, both
within and outside applicable warranty periods, is substantially likely to prevent the Toasters
from performing their essential function, making it impossible for Plaintiff to use his Toaster as
intended during its expected useful life.

26.     The defect rendered the Toasters unfit for the ordinary purpose for which toasters
are sold at the time they were sold to Plaintiff and members of the Class.

27.     The defect has necessitated and will continue to necessitate replacement of
and/or costly repairs to the Toasters.

28.     The Toasters have a uniform design defect that causes the timers to cease functioning rendering the Toasters unusable, the plastic to crack and the heating element to burn out prematurely.

**Plaintiff's Experience with the Toaster**

29.     Plaintiff purchased a new Dualit  toaster  from Gracious Homes, located in New York City at a cost of more than $200. He decided on a Dualit toaster based upon the company's representations of quality and durability.

30.     After using the Duralit toaster for a period of time according to instructions, Plaintiff experienced the failure of the toaster's timer. The toast proceeded to burn and the smoke detectors in his apartment were set off by the presence of smoke. Luckily, he was able to avoid a more serious conflagration.

31.      Plaintiff notified Dualit of the defect and was told by the company that it was not their problem. Plaintiff then went online and learned that this was a common occurrence and that the defective timers constituted a fire hazard. Plaintiff contacted the company yet again and the customer service representative merely referred him to a local address where he could purchase a new timer at an out-of-pocket cost of more than $40.

32.     Plaintiff spent the $40 dollars and received the new timer. Unfortunately, when he attempted to install the new timer, Plaintiff discovered that some of the screws on the bottom of the toaster were stripped and he was therefore unable to open the panel to replace the timer. Consequently, Plaintiff is unable to safely utilize his Dulit toaster, rendering it useless.

**Plaintiff and Class Members' Reasonable Expectations**

33.     In purchasing the Toaster, Plaintiff legitimately expected the toaster to operate in accordance with all of its intended purposes – including the ability to set the timer for the level of doneness and not have to watch the Toaster during its operation.

34.    Consumers reasonably expect that toasters like the Toasters at issue here will function properly for at least 10 years.  Indeed, Dualit's website advertises the longevity of its Toasters, indicating that "In celebration of #Dualit70 we launched a worldwide search to find the oldest working Dualit toaster. We received entries from all over the world, often accompanied with the story behind where the toaster came from and how it's been used. https://www.dualit.com/70

35.    Plaintiff and members of the Class reasonably expected the Toasters to effectively toast bread and other products, and function properly during the Toasters' expected useful lives.

36.    Plaintiff and members of the Class reasonably expected Dualit to disclose the existence of a defect that was known to Dualit at the time of sale, namely that the timers on the Toasters would cease to function after a short time resulting in a potential fire hazard, cracking of the plastic and defective heating elements.

37.    Because of the defect, Plaintiff's Toaster failed during its expected useful life, within or outside applicable warranty periods.

38.    As a result of the defect alleged herein, Plaintiff has experienced failure of his Toaster, did not get what he paid for, and has incurred actual damages.

**Dualit was Aware of the Defect**

39.    Before it sold the Toasters, Dualit knew, or was reckless in not knowing, that the Toasters contained a defect that would cause the Toasters to stop performing.

40.    Dualit did not implement a plan to address the defect and instead manufactured and sold subsequent models that contained the same defect.

41.    Dualit customers have indicated that beginning as early as 2012 that they notified and complained to Dualit that their Toasters were not functioning properly and that the timers had to be replaced.

42.    Upon information and belief, the defect was a known issue to Dualit at or about the time it began distributing toasters with the components containing the defect.

43.    Consumers, including Plaintiff, have complained repeatedly to Dualit about this defect, but Dualit refuses to address and rectify the problem and has failed and refused to reimburse customers for the cost of the replacement timers.

44.    Dualit was or should have been aware at the time it sold the Toasters that they were defective.  The following is a small sample of recent consumer complaints regarding the defect and Dualit's refusal to address it.

> From Amazon.com reviews of the products:
>
> 1.0 out of 5 stars Dualit Lite Traditional Design 46245
>
> "CHUNKY" Toaster in Black Soft Touch Finish
>
> ByMaineSailoron May 14, 2012
>
> Size: 4-Slice|Verified Purchase Toaster caught fire after second use. Wrote to company and they said good luck and to work with Amazon for returning the toaster. They didn't even say sorry for this horrible product. I do not recommend this product or brand.
>
> 1.0 out of 5 stars One sided started on fire and wont work after 7 months.
>
> By M. Johnsonon December 5, 2013 Size: 4-Slice|Verified Purchase Lasted about 7 months before it caught on fire. During

that time I used it about weekly, some weeks not at all, but some weeks maybe a couple times. No heavy use, and I did empty out the crumbs a few times. I was making some toast one morning and heard a louder than normal POP, and the bread pop up on one side after only being in the toaster for about 10 seconds. I go over to it and try to put the bread back down, which it does but immediately pops back up after about 1 second. At this point I smell something burning like plastic, so I take the bread out. I don't initially see anything, so I try to put the whatever it is back down, but it just makes a sort of buzzing sound and wont catch or stay down. I can still smell something burning, a little stronger now, so I lean forward to look down inside and towards the front I can see a flame. I blow it out. Of course now the one side will not work at all. So far the other side works OK.  Now what do I do?  I dug out the owner's manual that came with it and read that it has a 1 year warranty and I am to return it to the place I bought it from if there are problems. There is a phone number given to call with any questions. I tried calling, but the number is disconnected. I contacted amazon support and they emailed me a label to return it to them. Since the reviews are all over the place for this toaster, and most of the other Dualit toasters I read about, I kept the receipt and box just encase. Glad I did, but I don't have the shipping box it came in. Oh well, at least amazon is letting me return it to them. I

was initially hesitant to spend so much money on a toaster. There are some good reviews and I really liked how the toaster looks. I had it in my cart for a while and one day while checking my cart, it said the price dropped about thirty dollars, so I figured I'll get it. Now I will just stick to more reasonable priced toasters from more well known or common brands. If you decide to get one, make sure you keep the box and receipt encase you need to return it.

1.0 out of 5 starsFire hazard ByScott W.on January 16, 2014

Size: 4-Slice|Verified Purchase My second Dualit toaster. My first one was over $300.00. My second Dualit was the lite model, both toasters caught on fire.I am going to contact Dualit! Don't waist your money or the safety of your home

1.0 out of 5 starsChanged my mind ByDCon January 24, 2012

Size: 2-Slice|Verified Purchase Originally I gave the toaster a great review. After a year of use I have changed my mind. We use the toaster every day....kids. However, after a year of ordinary use the hard black plastic is breaking into pieces. Maybe from the heat? But it is literally falling to pieces. The chrome section has completely separated from the rest of the toaster and the black portion has cracks throughout. A complete disappointment!

1.0 out of 5 starsDisappointed ByJames Tayloron December 23, 2012 Size: 4-Slice|Verified Purchase one of the element boards failed with 2 weeks of use. I have sent it to the authorized repair

company in New Jersey but, to add insult to injury, I have to pay shipping both ways to get my warrantee service. I am not happy. We love the design and expected better from this company.

Second Time and It Doesn't Work ByLisa Aon May 2, 2013 Size: 4-Slice|Verified Purchase This is my second attempt to love this toaster. The first one they sent me had a cancel button that didn't work. Amazon quickly replaced this model and sent me another one. Yesterday, one side of the toaster sparked creating tons of smoke and almost a small fire. I am now trying to return this and it has passed expiration leaving me with an unsafe toaster and out $140!

3.0 out of 5 starsI like it but....the plastic is cracking!! BySBGUYon January 15, 2014 Size: 4-Slice|Verified Purchase I purchased this toaster September 14, 2011 from Amazon.com. I use it daily and it really does a great job. I have but one complaint. It has been sitting in the same spot since I bought it and has not been abused nor neglected. It has developed a 3 inch crack in the black plastic, presumably from the heat right at the top. I've searched the internet a bit for this and it seems to be a 'very common' occurrence. My expectation was that a toaster in this price range would last quite a bit longer than 2.5 years before beginning to fall apart. Perhaps Dualit or Amazon will chime in,

although I doubt it. Unfortunately, this ruins the otherwise good looks of the toaster :(

1.0 out of 5 starsToaster is Junk ByDaniel J Wenzelon August 19, 2013 Size: 2-Slice|Verified Purchase I purchased this expensive toaster, because I thought Dualit was the best. After 1 yr and 6 months the black plastic frame cracked in half ... The toaster was just sitting on the counter... I wrote Dualit directly and there response was take my complaint to the distributor. I've gotten nowhere because it's out of warranty. The toaster definitely has a design / fatigue issue. I guess I'll have to buy a 250 dollar toaster in the future. Save your money and avoid the disappointment. If you read the other reviews you will see this is a reoccurring problem.

Disappointed Byketucon April 25, 2012 Size: 2-Slice|Verified Purchase I decided to "invest" in a better toaster as urged by my family. After researching reviews I chose an entry level Dualit. Now mid-April one side has popped out and the plastic frame has cracked. The two screws in the metal are for show only. I can only guess that it is an expansion problem. Very disappointed in the construction--it toasted well.

Dualit, this is bad. Do the right thing. BySusanon December 26, 2015 Size: 4-Slice|Verified Purchase The black exterior of my toaster cracked just like others have reported. This is either a design or manufacturing problem, not a customer problem. If the

Dualit Company truly prides itself on quality, WHY IS IT SO SILENT IN FACE OF ALL THESE COMPLAINTS? Dualit, do the right thing and intercede on behalf these folks who trusted you.

From the Williams Sonoma Website regarding the products: ronnewyork Has owned product for: 6 - 12 months

★★★★★ 1 out of 5 stars. · 4 years ago    POORLY MADE PRODUCT I've had 3 Dualit toasters. They look great but they are poorly made. All three have had problems with the heating elements--either they burn out or they brown very unevenly. Each time I upgraded to a new one, I expected the problems to be fixed. I've learned my lesson. I well never purchase another Dualit, no matter what the ads hype. Williams-Sonoma has been great as always, in accepting the bad ones back.

+ Pros: Design

- Cons: Quality, Temperamental

✗ No, I do not recommend this product.

Shelp  Has owned product for: 1 - 5 years

★★★★★ 1 out of 5 stars.· 4 years ago    NOT WORTH THE MONEY We are on our second dualit toaster and now the heating element went out on this one. Although I love the look, I will not purchase another dualit! I think a toaster at this price should last for more than 2 years!

- Cons: Quality

✗ No, I do not recommend this product.

Bambolini Has owned product for: Over 5 years

★★★★★ 1 out of 5 stars.   5 years ago   THE WORST EVER!

Do not waste your time and money, Had 3 in the past several years...all had problems.. I finally bought a kitchen Aid and have no problems with it and love it!  -

Cons: High-Maintenance

✗ No, I do not recommend this product.

Gynangirl   Has owned product for: 1 - 5 years     Uses product: Once a week

★★★★★ 3 out of 5 stars.· 5 years ago   APPEARANCE IS NOT REALITY For the money, this toaster is very disappointing. Yes, it looks great sitting on my kitchen counter, but otherwise this toaster had been a disappointment.  I am on my second Daulit toaster. I had to return the first toaster because the heating dial malfunctioned. Fortunately the toaster was still under warranty and was exchanged in store.  Now, a few years later, the heating dial on the second toaster does not work. In addition, as noted in another review, the sides of the toaster, which are constructed of a lower grade material than the center of the toaster are corroding and looks terrible.. It took me months to convince my husband that we should buy this toaster. This experience has only served to convince my husband that one cannot buy quality in the United

> States anymore, even if one is willing to pay for it.  From now on
> we will buy the cheap, albeit less stylish brands, which last just as
> long, and put our hard earned money to a much better use.
>
> > + Pros: Easy to Use, Design
> >
> > - Cons: Quality, not worth the
> >
> > cost
> >
> > ✗ No, I do not recommend this
> >
> > product.

45.     As this small sampling of just some of the complaints makes clear, Dualit is aware of the defect in the Toasters and has done nothing to address it.  At least one consumer had posted a video on YouTube detailing the repair that he had to make to replace the timer. See https://www.youtube.com/watch?v=bo4J80m0amk

46.     This video has been viewed, as of the date of this filing, a total of 2,655 times, which indicates that many individuals are having an issue with the timer and seeking to make the repair themselves. Some of the comments posted regarding the video include the following:

> Francis Donnolly- Like you say, it's a good guess these timers are failing regularly (a real
> hazard). I recently replaced my timer, which was working irregularly, and found the
> terminals burnt and wires melted together, a result of the timer failing to stop in
> operation. The whole classic design thing is a whole heap of hype. Be careful.
>
> Turtle- Thanks - useful video to save me having to send toaster to dualit for fixing.

47.     For those Toasters that have failed within the applicable warranty period, Dualit requires that the product be serviced at an authorized service center but does not cover shipping

costs. However these repairs  do not address the underlying defect and do nothing to prevent subsequent failure.  Dualit was aware, had reason to know, or was reckless in not knowing that its warranty repairs would not cure or rectify the defect but would instead merely delay the impact of the defect which caused reoccurring failures.  By providing such ineffective warranty repairs Dualit merely postponed the failure of the Toasters until after the expiration of applicable warranties.

48.     The repairs that Dualit recommends do not address the underlying defect and do nothing to prevent subsequent failure in the Toasters.

49.     Dualit knew that the repairs it recommended would not cure the defect. Nonetheless, it refuses to refund customers or replace the Toasters with ones that function properly.

**Dualit's Omissions and Misrepresentations**

50.     Dualit failed to adequately design, manufacture, and/or test the Toasters to ensure that they were free from the defect, and/or knew, had reason to know, or was reckless in not knowing of the defect when it uniformly warranted, advertised, marketed and sold the Toasters to Plaintiff and the Class.

51.     Dualit did not disclose to its customers the fact that the defect existed at the time of sale and that the defect would render the Toasters unable to perform their essential function well before the end of their expected useful lives.  Nor did Dualit disclose that warranty or the recommended post-warranty repairs would not cure or rectify the defect and would only, at best, briefly delay the impact of the defect and thereby postpone failure in the Toasters.

52.     Instead, in its uniform marketing and advertising, Dualit falsely represented that the Toasters were free from defects.

53.     Dualit knew that consumers were unaware of the latent defect and that they reasonably expected the Toasters to perform their function for their expected useful lives. Disclosure of the latent defect would impact consumers' decision whether to purchase the Toasters.  Dualit knew and intended for consumers to rely on its material omissions with regard to the defect when purchasing the Toasters.

54.     As a result of Dualit's uniform omissions and misrepresentations in its marketing and advertising, Plaintiff believed that the Toaster he purchased would operate without defects, and Plaintiff purchased a Dualit Toaster in reliance on that belief.

55.     Dualit's representations that the Toasters were free of defects were not true. Dualit knew or was reckless in not knowing when it sold the Toasters that the defect would manifest long before the end of the Toasters' expected useful lives, rendering the Toasters unable to function properly.

56.     Dualit had the capacity to, and did, deceive consumers into believing that they were purchasing toasters that were free from defects and could be used safely and practically for many years to come.

57.     Dualit actively concealed from and/or failed to disclose to Plaintiff, the Class, and everyone, the true defective nature of the Toasters, and failed to remove the Toasters from the marketplace or take adequate remedial action.  Dualit represented that the Toasters were free of defects even though it knew or was reckless in not knowing when it sold the Toasters that they contained a defect that would render the Toasters unable to function because the timers would break, the plastic would crack and the heating elements would burn out.  Furthermore, Dualit sold and serviced the Toasters even though it knew, or was reckless in not knowing, that the

Toasters were defective and that Plaintiff and Class members would be unable to use the Toasters for their intended purpose for the duration of their expected useful life.

58.    To this day, Dualit continues to misrepresent and/or conceal material information from Plaintiff, the Class and the public about the defect in the Toasters.

**Fraudulent Concealment Allegations**

59.    Plaintiff's claim arises in part out of Dualit's fraudulent concealment of the defect.  To the extent that Plaintiff's claims arise from Dualit's fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiff bases his claim.  He alleges that at all relevant times, including specifically at the time he purchased his Toaster, Dualit knew, had reason to know, or was reckless in not knowing, of the defect; Dualit was under a duty to disclose the defect based upon its exclusive knowledge of it, its representations about its products, and its concealment of the defect; and Dualit never disclosed the defect to the Plaintiff or anyone at any time or place or in any manner.

60.    Plaintiff makes the following specific fraud allegations with as much specificity as possible absent access to the information necessarily available only to Dualit:

a.    Who:  Dualit concealed the defect from Plaintiff, the Class, and everyone in the chain of distribution.  Plaintiff is unaware of, and therefore unable to identify, the true names and identities of those individuals at Dualit responsible for such decisions.

b.    What: Dualit knew, or had reason to know, at the time it sold the Toasters, or was reckless in not knowing, the fact that an existing defect in the Toasters would cause the timers in the Toasters to stop functioning resulting in a fire hazard, cracking plastic and burnt out heating elements and thereby render the Toasters unable to perform an essential purpose before the end of their expected useful lives, within or outside the applicable warranty periods.

c.   When: Beginning no later than 2012, Dualit concealed this material information at all times with respect to the Toasters, including before the time of sale, on an ongoing basis, and continuing to this day.

d.   Where:  Dualit concealed this material information in every communication it had with Plaintiffs, the Class, and everyone in the chain of distribution.  Plaintiff is aware of no document, communication, or other place or thing, in which Dualit disclosed this material information to anyone outside of Dualit.  Such information appears in no sales documents, no displays, no advertisements, no warranties, no owner's manual, nor on Dualit's website.

e.   How: Dualit concealed this material information by not disclosing it to Plaintiff, the Class, or anyone in the chain of distribution at any time or place or in any manner, even though it knew this information and knew that it would be important to a reasonable consumer, and even though its omissions with regard to the defect and consequent premature failures  of the Toasters  were  contrary to its representations about the Toasters.

f.    Why: Dualit concealed this material information for the purpose of inducing Plaintiff and Class members to purchase the defective Toasters at full price rather than purchasing competitors' toasters or paying Dualit less for the Toasters, given their limited utility.  Had Dualit disclosed the truth, Plaintiff (and reasonable consumers) would not have bought the Toaster, or would have paid less for them.

## V.  NEW YORK'S SUBSTANTIVE LAW APPLIES TO THE PROPOSED NATIONWIDE CLASS

61.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

62.    New York's substantive laws apply to the proposed nationwide Class, as set forth in this Complaint, because Plaintiff properly brings this action in this District.  A United States Court sitting in diversity presumptively applies the substantive law of the State in which it sits.

63.    New York's substantive laws may be constitutionally applied to the claims of Plaintiff and the Class under the Due Process Clause, 14th Amend. § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution.  New York has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiff and all Class members, thereby creating state interests that ensure that the choice of New York's state law is not arbitrary or unfair.

64.    Defendant conducts substantial business in New York providing New York with an interest in regulating Defendant's conduct under New York's laws.  Defendant's decision to regularly conduct business in New York and avail itself to New York's laws render the application of New York law to the claims at hand constitutionally permissible.

65.    The injury to Plaintiff and a significant number of proposed Class Members by virtue of the misconduct alleged, occurred in New York.  Plaintiff resides in New York and purchased the defective product in New York.

66.    New York has a materially greater interest than any other State in enforcing its laws with respect to the conduct of corporations located in and doing business in New York.

67.    The application of New York's laws to the proposed Nationwide Class Members is also appropriate under New York's choice of law rules because New York has significant contacts to Plaintiff's claims and to the Nationwide Class Members.

## VI. CLASS ACTION ALLEGATIONS

68.    Plaintiff brings this action on behalf of himself and all other persons similarly situated, pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

69.    The Class that Plaintiff seeks to represent is defined as follows:  All persons or entities residing in the United States who own, or have owned, Dualit toasters containing a defect that causes the toaster's timer to break, the plastic to crack and/or the heating element to burn out prematurely. Excluded from the Class are (a) Dualit, any entity in which Dualit has a controlling interest, and its legal representatives, officers, directors, employees, assigns, and successors, (b) the United States government and New York agency or instrumentality thereof; (c) the judge to whom this case is assigned and any member of the judge's immediate family; and (d) individuals with claims for personal injury, wrongful death and/or emotional distress.

70.    **Numerosity/Impracticability of Joinder**:  The members of the Class are so numerous that joinder of all members would be impracticable.  The proposed Class includes tens of thousands of members.  The Class is composed of an easily ascertainable, self-identifying set of individuals and entities that own or owned the Toasters.  The precise number of Class members can be ascertained by reviewing documents in Defendant's possession, custody, and control.

71.    **Commonality and Predominance**:  There are common questions of law and fact that predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, include, but are not limited to, the following:

   a)    Whether Defendant Dualit's Toasters were defectively designed, manufactured, marketed, distributed and sold;

   b)    Whether Defendant Dualit's knew or should have known that the Toasters were defectively designed, manufactured, marketed, distributed and sold;

c) Whether Defendant Dualit knowingly concealed the defective nature of the Toasters;

d) Whether Defendant Dualit engaged in illegal business practices by failing to recall or sufficiently repair the Toasters without charging the class members;

e) Whether Defendant Dualit misrepresented the durability and usefulness of the Toaster;

f) Whether, by the misconduct set forth herein; Defendant Dualit violated consumer protection statutes and/or false advertising statutes and/or state deceptive business practice statutes

g) Whether, by the misconduct set forth herein; Defendant Dualit violated expressed and implied warranty statutes and the MMWA;

h) Whether, by the misconduct set forth herein; Defendant Dualit; violated the common laws of negligent misrepresentation and unjust enrichment;

i) Whether, by the misconduct set forth herein; Defendant Dualit; breached its duty of good faith and fair dealing; and

j) The nature and extent of damages and other remedies to which the conduct of Defendant Dualit entitles the class members;

k) Whether Dualit's acts and omissions violated the New York's General Business Law § 349, *et seq.*;

72.    **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all Class members have been injured by the same wrongful practices by Dualit.  Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal and remedial theories.

73.    **Adequacy**:  Plaintiff will fully and adequately assert and protect the interests of the Class, and has retained class counsel who are experienced and qualified in prosecuting class actions.  Neither Plaintiff nor his attorneys have any interests that are contrary to or conflicting with the Class.

74.    **Superiority**:  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is not economically feasible and is procedurally impracticable.  While the aggregate damages sustained by the Class are in the millions of dollars, and are no less than five million dollars upon information and belief, the individual damages incurred by each Class member resulting from Dualit's wrongful conduct are too small to warrant the expense of individual suits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.   In addition, Dualit has acted or refused to act on grounds generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

## VII.    CLAIMS FOR RELIEF

### FIRST COUNT
### (Violations of New York's General Business Law § 349, *et seq.*,)

75.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

76.    Plaintiff and Class members are consumers who purchased Dualit Toasters for personal use.  Plaintiff brings this action pursuant to New York General Business Law § 349.

77.    Defendant engaged in consumer-oriented, commercial conduct by selling and advertising the subject product.

78.    Defendant misrepresented and omitted material information regarding the subject product and/or its packaging by failing to disclose known defects and risks.

79.    Defendant's misrepresentations and concealment of material facts constitute unconscionable  commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of materials facts with the intent that others rely on such concealment, suppression, or  omission in connection with the sale and advertisement of the subject product, in violation of New York General Business Law ("GBL") §349.

80.    New York has enacted statutes to protect consumers from deceptive, fraudulent, and   unconscionable trade and business practices.  Defendant violated these  statutes  by knowingly and falsely representing that the subject product and/or its packaging were fit to be used for the  purpose for which it was intended, when Defendant knew it was defective and dangerous, and by other acts alleged herein.

81.     Defendant engaged in the deceptive acts and practices alleged herein in order to sell the subject product to the public, including Plaintiff and Plaintiff Class Members.

82.     As a direct and proximate result of Defendants' violations of GBL § 349, Plaintiff and Plaintiff Class Members have suffered damages, for which they are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

83.     That by reason of the foregoing, Plaintiff and Plaintiff Class Members has been damaged in an amount which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## SECOND COUNT
### (Fraudulent Concealment/Nondisclosure)

84.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

85.     Dualit knew or was reckless in not knowing at the time of sale that the Toasters are defective in that they are substantially certain to fail well in advance of their anticipated useful life.

86.     Dualit fraudulently concealed from and/or intentionally failed to disclose to Plaintiff, the Class, and all others in the chain of distribution the true defective nature of the Toasters and that it routinely malfunctioned, rendering it unusable and inoperable.

87.     Dualit had exclusive knowledge of the defect at the time of sale.  The defect is latent and not something that Plaintiff or Class members could, in the exercise of reasonable diligence, have discovered independently prior to purchase.

88.    Dualit had the capacity to, and did, deceive consumers into believing that they were purchasing toasters that could be used safely and practically without the risk of causing a fire and damaging the Toaster.

89.    Dualit undertook active and ongoing steps to conceal the defect.    Plaintiff is aware of nothing in Dualit's advertising, publicity, or marketing materials that discloses the truth about the defect, despite Dualit's awareness of the problem.

90.    The facts concealed and/or not disclosed by Dualit to Plaintiff and the Class  are material facts in that a reasonable person would have considered them important in deciding whether or not to purchase (or to pay the same price for)  a toaster.

91.    Dualit had a duty to disclose the fact that a defect existed at the time of sale by virtue of the fact that consumers would reasonably expect disclosure of the defect.

92.    Dualit intentionally concealed and/or failed to disclose the problems with the Toaster for the purpose of inducing Plaintiff and the Class to act thereon.

93.    Plaintiff and the Class justifiably acted or relied upon the concealed and/or non-disclosed facts to their detriment, as evidenced by their purchase of the Toasters and/or replacement parts for the Toasters.

94.    Had Plaintiff and the Class known of the defect they would not have purchased (or would have paid less for) the Toasters.

95.    As a direct and proximate cause of Dualit's misconduct, Plaintiff and Class members have suffered actual damages in that they bought and own toasters  that contain an inherent defect and that have prematurely failed or are substantially certain to prematurely fail within and outside applicable warranty periods,  and they will be required to incur costs to repair  and/or  replace  the defective components or the Toasters as a whole.

96.     Dualit's conduct has been and is wanton and/or reckless and/or shows a reckless indifference to the interests of others.

97.     Dualit has acted with malice by engaging in conduct that was and is intended by Dualit to cause injury to the Plaintiff and the Class.

98.     Dualit has committed fraud through its concealment of material facts known to Dualit with the intent to cause injury to the Plaintiff and the Class.

99.     Plaintiff, on behalf of themselves and all others similarly situated, demand judgment against Dualit for actual and punitive damages for themselves and each member of the Class, plus attorneys' fees for the establishment of a common fund, interest, and costs.

**THIRD COUNT**
**(<u>Breach of Implied Warranties</u>)**

100.     Plaintiff incorporates the above allegations by reference as if fully set forth herein.

101.     Dualit sold and promoted the Toasters, which it placed into the stream of commerce.  Defendant knew or had reason to know of the specific use for which the Toasters were purchased, and it impliedly warranted that the Toasters were of merchantable quality and fit for such use.

102.     Plaintiff and Class members reasonably relied upon the expertise, skill, judgment, and knowledge of Defendant Dualit and upon its implied warranty that the Toasters were of merchantable quality and fir for such use.

103.     Through the conduct alleged herein, Dualit has breached the implied warranty of fitness for a particular purpose.  The defectively designed Toaster were not fit for the particular purpose for which they were purchased by class members to perform.  The Class members purchased the Toasters for a particular purpose of being able to toast bread and similar products

without the need for the Class member to stay in the room for the entire toasting period to avoid the product being toasted from going up in smoke.  Dualit knew that the class members were purchasing the Toaster for this purpose and marketed the product for this particular purpose even advertising that the company's founder invented the first toaster containing a timer.

104.    Plaintiff and Class Members relied on Defendant's misrepresentations by purchasing the Toasters.

105.    Defendants knew or had reason to know that Plaintiff and Class Members were influenced to purchase the Toaster through Defendants' expertise, skill, judgment and knowledge in furnishing the products for their intended use.

106.    The Toasters were not of merchantable quality and were not fit for their particular intended use because the design and/or manufacturing defects alleged herein render them incapable of toasting without constant attention by the Class Member.

107.    Defendants' actions, as complained of herein, breached their implied warranty that the Toasters were of merchantable quality as fit for such use, in violation of the Uniform Commercial Code (UCC § 2-314 and  § 2-3154) and the common law of this State, as well as the common law and statutory laws of the other states.

108.    Plaintiff and the Class Members have incurred damage as described herein as a direct and proximate result of the failure of Defendant to honor its implied warranty.  In particular, Plaintiff and Class Members would not have purchased the Products had they known the truth about their defects; nor would they have suffered the collateral effects and damages associated with these defects.

## FOURTH COUNT
### (<u>Breach of Express Warranties</u>)

109.    Plaintiff incorporates the above allegations by reference as if fully set forth herein.

110.    Defendant warranted that all of the Toasters were free from defects in material or workmanship at a time when it knew that the Toasters suffered from serious defects and nevertheless, continued to market and sell these Toasters with this express warrant.

111.    Defendant has breached its express warranties, as set forth above, by supplying the Toaster in a condition which does not meet the warranty obligations undertaken by Dualit and by failing to repair or replace the defective Toaster or defective parts.

112.    Defendant has received sufficient and timely notice of the breaches of warranty alleged herein.  Despite this notice and Dualit's knowledge, Dualit refuses to honor its warranty, even though it knows of the inherent defect in the Toaster.

113.    In addition, Dualit has received, upon information and belief, hundreds if not thousands of complaints and other notices from its customers nationwide advising it of the defects complained of herein.

114.    Plaintiff has given Defendant a reasonable opportunity to cure its failures with respect to its warranties, and Defendant failed to do so.

115.    Defendant has failed to provide Plaintiff or the Class members, as a warranty replacement, a product that conforms to the qualities and characteristics that Dualit expressly warranted when it sold the Toaster to Plaintiff and the Class.

116.    As a result of Dualit's breach of warranty, Plaintiff and the Class have suffered damage in the amount to be determined at trial.

## FIFTH COUNT
### (Violations of the Magnuson-Moss Warranty Act)

117.    Plaintiff incorporates the above allegations by reference as if fully set forth herein.

118.    Plaintiffs and class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act ("MMWA").

119.    Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the MMWA.

120.    The Toasters are a "consumer product" as defined by the MMWA.

121.    Defendants' written affirmations of fact, promises, and descriptions as alleged created a "written warranty" as to the Toasters. There was an implied warranty for the sale of such product within the meaning of the MMWA. Such warranties were further described in the express and implied warranty counts above.

122.    As detailed herein, defendants breached these express and implied warranties, as the Toasters were not fit for their intended use and were not defect free.

123.    The Toasters were sold with a defects which existed when the product left the Defendants' control.

124.    Defendants knew of the defects as early as 2012, when complaints began appearing on various websites as detailed above, yet Defendants failed to remedy these breaches and their conduct, thus damaging plaintiff and the class.

125.    The class consists of over one hundred members.

126.    The amount in controversy meets or exceeds the sum or value of $50,000.00 (exclusive of interest and costs) computed on the basis of all claims to be determined.

## SIXTH COUNT

### (Unjust Enrichment)

127.   Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

128.   Dualit has been unjustly enriched by the sale of the Toasters to Plaintiffs and the Class members.

129.   Plaintiff seeks to recover for Dualit's unjust enrichment under New York State law.

130.   Plaintiff and the Class members conferred a benefit on Dualit, but Dualit failed to disclose its knowledge that Plaintiff did not receive what they paid for and misled Plaintiff and the Class regarding the qualities of the Toasters while profiting from this deception.

131.   The circumstances are such that it would be inequitable, unconscionable, and unjust to permit Dualit to retain the benefit of these profits that it unfairly has obtained from Plaintiff and the Class members.

132.   Plaintiff and the Class members, having been injured by Dualit's conduct, are entitled to restitution or disgorgement of profits as a result of the unjust enrichment of Dualit to their detriment.

### SEVENTH COUNT
### (Negligent Misrepresentation)

133.   Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

134.   Defendant Dualit made a series of misrepresentations and material omissions, as alleged herein, and including misrepresentations in its standard written warranty and otherwise that it would repair defective Toasters.  Defendant's statements were material, false, deceptive,

and misleading and omitted material facts necessary to make the statements not misleading; such material misrepresentations and omissions were the result of the Defendant's negligence.

135.    Defendant owed a duty to Plaintiff and members of the proposed Class to exercise reasonable care in making representations about the Toasters.

136.    Plaintiff and the proposed Class members relied (or should be presumed to have relied) on Defendant's material representations and omissions in purchasing the Toasters.  As a result of their justifiable reliance, Plaintiff and member of the proposed Class were induced to and did purchase the Toasters.  Plaintiff's reliance and the proposed Class members' reliance were reasonably foreseeable by Defendant (and in fact, that is why the Defendant made the misrepresentations that it did).

137.    As a direct and proximate result of the negligent misrepresentations made by Defendant, Plaintiff and the proposed Class members have been damaged.

## EIGHTH COUNT
### (Breach of Good Faith and Fair Dealing)

138.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

139.    Defendant's actions injured the right of Plaintiff and class members to receive the benefits of the contract, in violation of New York common law and the common law of other states.

140.    Plaintiff and the Class members have incurred damages as described herein as a result of Defendant's breach of its duty of good faith and fair dealing.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and the Class, pray for judgment against Dualit granting the following relief:

1.      An order certifying this case as a class action and appointing Plaintiffs to represent the Class and Plaintiffs' counsel as Class counsel;

2.      All recoverable compensatory and other damages sustained by Plaintiff and the Class;

3.      Restitution and disgorgement of all amounts obtained by Dualit as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

4.      Actual, treble, and/or statutory damages for injuries suffered by Plaintiff and the Class in the maximum amount permitted by applicable law;

5.      An order (1) requiring Dualit to immediately cease its wrongful conduct as set forth above; (2) enjoining Dualit from continuing to conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; and (3) requiring Dualit to refund to Plaintiffs and all members of the Class the funds necessary to repair or replace the Toasters as appropriate and / or refund to Plaintiff and all Class members the funds paid to Dualit for the defective Toasters;

6.      Statutory pre-judgment and post-judgment interest on the Class damages;

7.      Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

8.      Such other relief as the Court may deem just and proper.

## IX.    DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all causes of action so triable.


DATED: February 21, 2017

**NAGEL RICE, LLP**

By:     /s Greg Kohn
            Greg Kohn
Bruce H. Nagel (Pro Hac Vice Admission to be sought)
Randee  Matloff( (Pro Hac Vice Admission to be sought)
103 Eisenhower Parkway
Roseland, New Jersey 07068
973-618-0400
gkohn@nagelrice.com
bnagel@nagelrice.com
rmatloff@nagelrice.com

Counsel for Plaintiff and those similarly situated